HARRY B. BRADBURY

*vs.*

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA.

Knox.   Opinion June 5, 1919.

*Contract of fire insurance. Rule as to referenece under policy. Rule as to referees being disinterested. Burden of showing that referees are not disinterested. How same may be proven. Necessity of showing knowledge of parties selecting the referees. Effect on policy where hearing has not been by disinterested referees.*

This case involves a common law action on an insurance policy of the standard form. The gravamen of the action is founded upon the allegation that the insurance company, in presenting three men from whom one was to be selected by the insured, did not offer three disinterested men, and by reason thereof the hearing was unfair, biased and prejudicial, on the part of the defendant's referees, and the award of the referees therefore void.

The real issue raised by the demurrer, and the one upon which we think the defendant relies, is whether the allegation the truth of which is admitted by the demurrer, that the defendant company offered three interested men for choice of a referee, without alleging scienter by the company, will sustain the action.

The plaintiff's declaration contains the following averments with regard to the conduct of two of the referees, one of whom was chosen by the defendant, namely: "The plaintiff further avers that it was the duty of the defendant in presenting the names of parties from which the plaintiff was to select a referee, to present men disinterested, and it was also the duty of the two referees to select a disinterested third referee; but the plaintiff avers that the defendant, forgetful of its legal duty, did not present the names of disinterested men, as required by the policy and by the law; but did present names of parties filled with bias and partizanship, in favor of the defendant. The declaration then proceeds to set out in detail the acts of the two referees complained of, which are averred as tending to show their incompetency, their bias, their prejudice and their unfairness.

In *Young* v. *Insurance Company,* 101 Maine, 294, it is *held:* That "the spirit of the statute requires that the three referees shall be as free from pecuniary interest and relationship as judges and juries are required to be, and also be as free from bias, prejudice, sympathy and partizanship, as judges and jurors are presumed to be.

*Held,* under the rule in the Fisher case, that, if "the arbitration failed by reason of the defendant's fault," the other party "is not bound to enter into a new arbitration agreement."

Action of assumpsit to recover upon a policy of insurance issued by defendant company. The plaintiff claimed that on account of interest, prejudice and bias on the part of the alleged referee nominated by the defendant, and on the part of the alleged third referee, the alleged award was void. The defendant seasonably filed a general and special demurrer to the plaintiff's declaration, which was joined in by the plaintiff. The presiding Justice overruled the defendant's demurrers and allowed the defendant to plead over in the event the Law Court should overrule the defendant's exceptions; to which ruling the defendant filed exceptions. Exceptions overruled.

Case stated in opinion.

*M. A. Johnson, and A. S. Littlefield*, for plaintiff.

*William H. Gulliver*, for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, WILSON, DEASY, JJ.

SPEAR, J. This case involves a common law action on an insurance policy of the standard form. The gravamen of the action is founded upon the allegation that the insurance company, in presenting three men from whom one was to be selected by the insured, did not offer three disinterested men, and by reason thereof the hearing was unfair, biased and prejudicial, on the part of the defendant's referees, and the award of the referees therefore void.

The case comes up on special demurrer, assigning eleven causes of error, but upon an examination of the declaration in the light and intention of R. S., Chap. 87, Sec. 38, which provides that a simple action of assumpsit may be brought on an account annexed, upon an insurance policy, we are of the opinion that the questions raised by the demurrer are matters of defense rather than of pleading.

The real issue raised by the demurrer, and the one upon which we think the defendant relies, is whether the allegation, the truth of which is admitted by the demurrer, that the defendant company offered three interested men for choice of a referee, without alleging scienter by the company, will sustain the action. The defendant relies upon *Fisher* v. *Insurance Co.*, 95 Maine, 485, as quoted in *Mowry* v. *Insurance Co.*, 106 Maine, 309. This was an action based upon the allegation "that the award was invalid because of

misconduct on the part of the referees.  .  .  .    There was neither allegation nor proof, however, that such misconduct was caused or participated in by the defendant, and it was accordingly held that if the award was invoked without the fault of the defendant, it was the duty of the defendant to seek a new determination in the manner provided by the contract."

A reference to the Fisher case will clearly show that it is not pertinent to the present issue.    On page 488 the court say: "The declaration as amended contained no averment to the effect that the alleged failure of arbitration .was through any fault upon the part of the defendant."    On page 490 follows a statement of the result if the fault had been chargeable to the defendant, namely: "If the arbitration had failed by reason of the defendant's fault, the result, upon principles of natural justice, would be different. Under such a clause in the policy of insurance it is the duty of the parties to act in good faith, and if either act in bad faith, so as to defeat the real object of the clause, the other is absolved from compliance therewith and is not bound to enter into a new arbitration agreement."    The only question is whether the plaintiff's allegation is sufficient in phraseology to aver the fault of presenting men not "disinterested," upon the defendant.    The language is as follows: "The plaintiff further avers that it was the duty of the defendant in presenting the names of parties from which the plaintiff was to select a referee to present men disinterested.  .  .  .  .    but the plaintiff avers that the defendant, forgetful of its legal duty, did not present the names of disinterested.men as required by the policy and by the law."    The declaration then proceeds to give the details of the defendant's alleged fault.

We think the above averment sufficient to charge the defendant with fault.    The phrase "forgetful of its legal duty" is tantamount to a charge of negligence, and negligence is a fault, upon which parties are holden in. nearly every activity in life.    The phrase "forgetful of its legal duty" is a common form of .declaring in nearly all actions of tort.    It is an expression common to our form of pleading to aver the want of due care and negligence, by declaring that the defendant was neglectful of its duty to the plaintiff, or of its legal duty, but on the contrary did certain things in contravention of that duty.    This is precisely the manner in which the phrase is used in the case before us, and then the declaration proceeds in the

usual form to set forth the facts which constitute the alleged violation of legal duty. Moreover, forgetfulness has been defined as tantamount to negligence. *Nye* v. *Schor,* 92 Wis., 40; 53 Am. St. Rep., 897, is a case involving a judgment, in which the defendants alleged or proved that they "forgot" about the case and asked to have it reopened upon that ground. That was also a case where the court say the judgment was inequitable and that the original plaintiff "had no cause of action against the plaintiffs the original defendants in the present case." The court say: "Failure to remember, entire forgetfulness to act as duty of interest requires, is so closely allied to laches or negligence that it is difficult, if not impossible, in a case like the present to distinguish between them. Indeed, "forgetfulness" is defined as negligence—careless omission: Century Dictionary." 19 Cyc., 1430, "Forgetfulness—Negligence, careless omission." In *Tasker* v. *Farmingdale,* 85 Maine, 523 "thoughtless, inattention" is defined as "the very essence of negligence." We cannot avoid the conclusion that the averment that the defendant was "forgetful of its legal duty" in naming men "not disinterested" is a sufficient allegation of negligence on the part of the defendant in this regard to make it a fault on its part, if proven. We think this pleading brings this case within the rule of the Fisher case. It will be observed that the Fisher case does not go so far as to require an allegation of scienter on the part of the defendant. The reason for this is perfectly obvious. If either the insured or the company were held to be immune from fault except upon averment and proof of knowledge, such rule would tend to close the door of honesty and throw wide open the door of fraud. Under such a rule either side could tamper with the referees, with little hazard of detection. Secret agreements could be carried out with impunity by either side. All parties to such a fraud would be equally culpable, and interested to cover their guilty conduct. Nor does the statute require proof of such knowledge to vitiate an award, but on the other hand, demands the action of an absolutely fair, honest, disinterested tribunal to sustain it. It is difficult, indeed, to prove negatively that the "men offered," for choice of referees, are men "not interested," but the interpretation of the insurance law upon this phase of the case, points out the method by which this requirement may be tested, and opens a wide avenue to the field of inquiry, that may be pursued to prove affirmatively, that the men offered are interested. *Young*

v. *Insurance Co.,* 101 Maine, 294, points the way.   It is held in this case that each party's freedom of choice of referees is materially abridged; that the plaintiff is obliged to make the stipulation for referees or go without insurance; that "the spirit of the statute requires that the three referees shall be as free from pecuniary interest and relationship as judges and juries are required to be, and also be as free from bias, prejudice, sympathy and partizanship, as judges and jurors are presumed to be.   If there is no other restriction as to the men to be nominated for the other party to choose from, or as to the third man, however appointed, than that they shall not be relatives and have no pecuniary interest, then either party may have forced upon him as referee, at least one violent partizan of the other party, or at least men incompetent, opinionated or biased.   The purpose of the statute might thus be wholly defeated and made to work an injustice."

We have quoted at length from this opinion, in order to make clear the inferences to be drawn therefrom, as to the nature of the evidence admissible, to prove any or all of the various faults there enumerated, which operate as a disqualification of a referee.   It is evident, as a deduction, that this evidence cannot be limited to what may take place in the selection of the referees.   It could not be anticipated, for instance, that a man offered would be a "violent partizan" or "incompetent"; and consequently these faults could be shown only by evidence of his conduct, while acting as a chosen referee.   It would at least be difficult to prove in any other way, that a referee was "opinionated" or "biased."   Therefore evidence of the conduct of the referees, from the time they are proposed, until they have completed their award, including what they say and do, which tends to prove any one of the disqualifications enumerated in the foregoing quotations from the Young case, is competent, and if sufficient to prove "violent partizanship," "incompetency", or that they are not as free from bias, prejudice, sympathy and partizanship as judges and jurors are presumed to be", vitiates the award.

The plaintiff's declaration contains the following averments with regard to the conduct of two of the referees, one of whom was chosen by the defendant, namely:   "The plaintiff further avers that it was the duty of the defendant in presenting the names of parties from which the plaintiff was to select a referee, to present men

disinterested, and it was also the duty of the two referees to select a disinterested third referee; but the plaintiff avers that the defendant, forgetful of its legal duty, did not present the names of disinterested men, as required by the policy and by the law; but did present names of parties filled with bias and partizanship, in favor of the defendant, and that said John B. Kehoe, presented by the defendant and innocently selected by the plaintiff, was absolutely incompetent, biased, prejudiced and unfair in his actions, and that said Lehan, selected on said Kehoe's recommendation, was also biased, and full of partizanship, in favor of the defendant, and both were unfair, biased and unjust in their actions and interest between the parties, so that at a hearing held by said referees on the thirtieth day of July, 1918, to honestly adjust said losses, said John B. Kehoe and J. Harold Lehan closed the hearing peremptorily, without notice to the plaintiff, after having made arrangements with the plaintiff and their associate referee to continue the hearing to the next day." The declaration then proceeds to set out in detail the acts of the two referees complained of, which are averred as tending to show their incompetency, their bias, their prejudice and their unfairness. Among other things it is averred that the plaintiff submitted an inventory, check book, bank book and other documentary evidence tending to prove his loss; that he also introduced a witness to testify as to the value of the property in the plaintiff's store and repair shop; that the plaintiff and his clerk also testified as to the goods, stock and fixtures in the store and repair shop at the time of the fire; that he offered to produce other evidence as to values but that he was not asked nor permitted to produce any further evidence; that the defendant offered no evidence openly or in hearing of the plaintiff or of his counsel at any time; that the referees continued the hearing at 5.30 P. M. to the next day; that they did not hold any further hearing; that the two referees named on the next day without notice to the plaintiff informed their associate referee that the hearing was closed; that they gave the plaintiff's counsel no oportunity to put in further evidence or to even argue the case as then put in; that the next day while the matter was under discussion the two referees against the protest of referee Hunt refused to consider the inventory or any of the evidence introduced by the plaintiff; that against the protests of referee Hunt they declared that the only evidence admissible of proof of value

was duplicate bills of goods purchased by the plaintiff, shippers' receipts and receipts for freight bills paid on all goods from all purchases, in order to show that the goods went into the store; that the referees named told referee Hunt that he did not understand the Jews and that the Jews were all trickey; that referee Hunt refused to sign or act in any such arbitrary manner; and that consequently the award of said referees is void.

Under the justly stringent rules laid down in the Young case regarding the selection, qualification and conduct of referees, we are of the opinion that the above declaration sets out a cause of action, as a matter of pleading, without alleging scienter on the part of the defendant.

The statute contemplates a fair and honest hearing, and not one unfair and dishonest, because not known to be unfair and dishonest by either of the parties. As the bias, prejudice or sympathy of a jury is inferred from their deliberations in the jury room, translated into a verdict, so may the partizanship, incompetency, bias, prejudice or sympathy of the referrees in an insurance case be inferred from their conduct and award.

Under the rule in the Fisher case, that, if "the arbitration failed by reason of the defendant's fault," the other party "is not bound to enter into a new arbitration agreement" the entry must be,

*Exceptions overruled.*